IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GABRIEL PITTMAN,                               :
        Plaintiff, pro se
#DT-1470                                       :
209 Institution Dr
P.O. Box 1000                                  :      3:17-CV-443
Houtzdale, PA 16698
    v.                                       :      Civ. Act. No. _____

PRESIDENT DONALD J. TRUMP,                     :
U S ATTORNEY GENERAL JEFF SESSIONS,
AMERICAN CORRECTIONAL ASSOCIATION,             :
JEFFREY BANKS, Corr. Off.. MHI-Houtzdale, PA
CHARLES BRENNAN, Corr. Off., MHI-Houtzdale, PA :
BRADLEY HERRON, Corr. Off., MHI-Houtzdale, PA
WILLIAM SWIRE, Corr. Off., MHI-Houtzdale, PA   :
PAUL PETERS, Corr. Off., MHI-Houtzdale, PA
SHAWN PETERS, Corr. Off., MHI-Houtzdale, PA,   :
individually and in their official capacities,
        Defendants

FILED
SCRANTON

MAR 10 2017

PER _____
DEPUTY CLERK

---

CIVIL COMPLAINT PURSUANT TO
28 U.S.C. SECTION 1331, AND
42 U.S.C. SECTIONS 1983, 1985, 1986 AND 1988,
ET CETERA

Gabriel Pittman
#DT-1470
209 Institution Dr.
P.O. Box 1000
Houtzdale, PA 16698

## I. JURISDICTION AND VENUE

1. This is a civil action authorized by 28 U.S.C. Sections 1331, 1343(a)(3), the Federal Tort Claims Act at 28 U.S.C. Section 1346, the Torture Victims Protection Act of 1991, the War Crimes Act of 1996, 18 U.S.C. Section 2441, the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. Section 1964, <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), 42 U.S.C. Sections 1983, 1985, 1986 and 1988, the Pennsylvania Tort Claims Act, the Universal Declaration of Human Rights, G.A. Res  217 A(III), U.N. Doc  A/810 (1948), and the International Covenant on Civil and Political Rights, December 16, 1966, 999 U.N.T.S. 171, to redress the deprivation, under the color of federal and state law, of rights secured by the Laws and Constitutions of the United States and the Commonwealth of Pennsylvania.  This Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3).  Plaintiff Gabriel Pittman seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202.  Plaintiff Pittman's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Middle District of Pennsylvania is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred, at the Federal and/or State confinement facility at the Mental Health Institution at Mahanoy, PA.

## II. PLAINTIFF

3. Plaintiff Gabriel Pittman, is and was at all time mentioned herein a Black Superpredator/Enemy Combatant-Belligerent/Prisoner of the United States of American and/or the Commonwealth of Pennsylvania, in custody of the Pennsylvania Department of Corrections, acting as a proxy for, and on

1

behalf of the United States Federal Government.  He is currently confined
in a Federal and/or State confinment facility at the Mental Health
Institution of Houtzdale, PA.

### III. DEFENDANTS

4. Defendant Donald J. Trump is the President of the United States of
America.  He is legally responsible as Commander-In-Chief of the Militia
Defendant Correctional Officers named below, and tasked with the
constitutional authority to see that the Laws of the United States are
faithfully executed.

5. Defendant Jeff Sessions is the United States Attorney General   He
is legally responsible for the Department of Justice and the DOJ's Office
of Justice Programs (OJP) and the federal funding that is granted to the
Pennsylvania Department of Corrections (PADOC) from various War On Crime
and Drugs federal regulatory programs used to build, maintain, and operate
prisons in the Commonwealth of Pennsylvania, and used to hire, train, and
pay the working salaries and living wages of the Defendant Militia PADOC
Correctional Officers named below.

6. Defendant American Correctional Association (ACA) is a private, non-
profit organization.  ACA is in a contractual relationship with the PADOC
and is legally responsible for accrediting each Federal and/or State
confinement facility agency, to include the Mental Health Institution (MHI)
at Mahanoy, PA, thereby by certifying and qualifying each agency for
receipt of federal funding to maintain and operate Federal and/or State
confinement facilities administered by the PADOC on behalf of the Federal
Government, as well as federal funding to hire, train and pay Defendant
Milita PADOC Correctional Officers named below.

7. Defendants Militia PADOC Correctional Officers Lieutenant (CO III)
Jeffrey Banks, Lieutenant (CO III) Charles Brennan, Sergeant (CO II)
Bradley Herron, Sergeant (CO II) William Swire, Correctional Officer (CO I)
Paul Peters and Correctional Officer (CO I) Shawn Peters, at all times
mentioned in this complaint, were PADOC Correctional Officers employed by
the United States Federal Government, through proxy of the Commonwealth of
Pennsylvania and the PADOC which operates, maintains and staffs the Federal
and/or State confinement facility at the Mental Health Institution at
Mahanoy, PA on behalf of the Federal Government. Each Defendant was
legally responsible for the custody, control, and care of Plaintiff on
behalf of the Federal and/or State Governments on November 10, 2015.

8. Each Defendant is sued individually and in their official capacity
At all times mentioned in this complaint, each Defendant acted under the
color of Federal and/or State law.


IV. FACTS

9. Plaintiff is not challenging his judgments of conviction or
sentence, nor the fact or duration of his confinement.

10. Petitioner is challenging the conditions of his confinement and the
unconstitutional use of excessive force inflicted upon him by Defendants on
November 10, 2015  at MHI-Mahanoy, PA.

11. Plaintiff believes he qualifies for the three-strikes provision of
the Prison Litigation Reform Act, but seeks in forma pauperis status
because he is at risk of imminent serious bodily injury where Plaintiff is
engaged in an active, legal, constitutionally-protected protest against
PADOC officials, employees and correctional officers exercising authority
over him without Tenth Amendment sovereign state police power to regulate

3

his daily actions in prison. Over the past year and a half Plaintiff has been tortured, beaten, maimed and attacked with the chemical weapon of OC spray for exercising his right to lawfully and peacefully protest through the civil disobedience of refusing to obey the arbitrary orders of PADOC correctional officers, acting on behalf of the Federal Government. Plaintiff has been diagnosed with a serious mental illness which contributes to his reasonable, sincere belief that he must continue to resist, even at the cost of death, PADOC officials' unconstitutional actions. The underlying complaint is offered as proof of the imminent serious bodily injury Plaintiff faces within any agency prison of the PADOC and by any PADOC employee or correctional officer who goes above the call of duty to exercise "control" over Plaintiff, thereby justifying the grant of in forma pauperis status.

12. Following the April 19, 1989 attack on a Central Park jogger in New York City, New York, the Federal Government and State governments of the several fifty states discriminatorily, arbitrarily and maliciously labeled Black and Brown children and teens as "Superpredators," and/or otherwise used the discriminatory, arbitrary and malicious label, as coined by political scientist John J. Dilulio (who later recanted his "finding"), to stoke White fear across the Nation and to enhance America's War on Crime, Drugs and/or People of Color that has been ongoing since the Federal Government's implementation of the Omnibus Crime Control and Safe Streets Act of 1968.

13. On September 13, 1994, the Federal Government enacted the Violent Offender Incarceration and Truth In Sentencing (VOITIS) Incentive Grant Program and created the Violent Crime Reduction Trust Fund to provide the several 50 states, including the Commonwealth of Pennsylvania, with federal

4

funding to build, maintain and operate prisons in which to imprison, particularly, Black and Brown Superpredator/Enemy Combatant-Belligerent/Prisoners removed from the battlefields of urban American inner-cities, and further used federal funding from VOITIS and the Trust Fund to hire and pay prison personnel and correctional officers across the breadth of rural America, thereby discriminatorily providing federally-subsidized, government welfare, affirmative action employment to America's poor-White rural American Citizens, literally taking the private property of Black and Brown bodies, minds and souls for public use without just compensation.

14. Through each successive Federal and Pennsylvania state Executive administration from 1994 to present, public funds have been misappropriated, misused and abused where federal regulatory programs have been implemented to continue the policy and custom of America's War on Crime, Drugs and/or People of Color and to continue the policy and custom of providing federal funding to States, including the Commonwealth of Pennsylvania, to build, maintain, operate and staff prisons, giving rise to the disgraceful phenomenon of mass incarceration and the prison-industrial complex which disproportionately and discriminatorily targets and disadvantages Black and Brown people on the basis of racial animus customarily and knowingly exerted by the Government against People of Color since the birth of the Nation.

15. In February 2017, Defendant President Donald J. Trump signed three executive orders calling specifically for a crackdown on crackdown across America, thereby justifying the continued implementation of War On Crime federal regulatory programs and further grants of federal funding to build, maintain, operate and staff public and private prisons across America to

imprison Citizens and aliens, and specifically continuing to provide federally subsidized, government welfare, affirmative action employment and salaries to poor-White rural PADOC correctional officers tasked with the mission of custody and control over Plaintiff's Black body.

16. During confirmation hearings in January 2017, Defendant U.S. Attorney General Jeff Sessions named as one of his top priorities the prevention of the crime of prison rape, for which the federal regulatory program of the Prison Rape Elimination Act (PREA) of 2003 currently exists, providing federal funding to the PADOC to hire, train and pay prison personnel and correctional officers.

17. On or about February 24, 2017, Defendant Sessions reinstated the prior administration's banning of the use of for-profit private prisons in the Federal Bureau of Prisons which, inevitably, will justify the continuance of federal funding being used to contract not only with for-profit private prison entities, but also to continue federal funding issuing from the Office of Justice Programs and various other DOJ programs for the purpose of the PADOC building, maintaining, operating and staffing public prisons, and contracting with for-profit private prison entities, to warehouse Black and Brown urban, inner-city Commonwealth citizens in prisons across rural Pennsylvania, staffed by poor-Whited rule Commonwealth citizens under the current Federal administration's policy of cracking down of truly local, intrastate crime in order to Make America Great Again.

18. Within the past three years prior to November 10, 2015, Defendant American Correctional Association has acquiesced to MHI-Mahanoy's policy and/or custom of voluntarily permitting Defendant ACA to usurp and/or assume the Commonwealth's Tenth Amendment sovereign state police power to inspect and audit its own correctional facilities, by auditing and

accrediting MHI-Mahanoy for the primary purpose of ensuring that MHI-Mahanoy meets the requirements of the various federal regulatory programs such as VOITIS, PREA, the Juvenile and Adult Collaboration Grant Program, 21st Century Curest Act, etc...., in order to continue receiving federal funding for what the Tenth Amendment of the Constitution demands to be the sovereign state purpose and the Commonwealth's sole responsibility of building, operating, maintaining and staffing PADOC state correctional institutions with state funds from its own state treasury.

19. Through receipt of federal funding from said War On Crime, Drugs and/or People of Color federal regulatory programs, the PADOC and each of the Defendant Militia PADOC, MHI-Mahanoy Correctional Officers named herein, have been pressed into the service of the United States under the War Powers of Article I, Section 8, Clauses 1, 10, 11, 12, 13, 14, 15, and/or 16, and the Executive's Article II Commander-In-Chief Power. The Federal Government has no authority under the Spending, Commerce, or Necessary and Proper Clauses or Section 5 Fourteenth Amendment Enforcement Power Clause to provide the Commonwealth with federal funds to build, maintain, operate and staff state prisons. Since November 7, 2016, Defendants Trump and Sessions have conflated and equated the local, intrastate criminal activities in Chicago and throughout America's majority African-American inner-cities with terrorism and national security concerns. Just as President Trump unequivocally stated pertaining to the current strict enforcement of immigration laws, the War On Crime and Drugs is a "military operation" which America has waged since 1968 to present, and for which Defendant Trump signed executive actions/orders to enhance, and because the Nation has been in a perpetual state of national emergency since September 11, 2001, it is clear that all PADOC correctional officers

7

have been called up as the Militia, in service of the United States and regulated by the rules of the United States, tasked with the mission of exercising care, custody and control over Plaintiff on behalf of the United States in Federal and/or State confinement facilities throughout the Commonwealth and PADOC.

20. On December 7, 1997, Plaintiff Gabriel Pittman was captured as a Black Superpredator/Enemy Combatant-Belligerent/Prisoner of America's War on Crime and handed over to PADOC authorities for detention and/or imprisonment in August of 1998, and has remained in their custody for the past nineteen years.

21. In March 2014, Plaintiff was diagnosed, by the PADOC, with a serious mental illness and classified with a mental health status of D-Stability following a hungerstrike through which he protested being deprived of access to the courts under Pennsylvania's PCRA' ban on successive habeas filings and the one-year time limit, and AEDPA's ban on second or successive filings of federal habeas corpus petitions.

22. Due to the D-stability mental health status classification, in April 2015, Plaintiff was transferred to the VOITIS and PREA-funded, Federal and/or State confinement facility, Mental Health Institution at Mahanoy PA, which is operated and administered by the PADOC on behalf of the Federal Government.

23. On November 10, 2015, in SCI-Mahanoy's Inmate Dining Room (IDR) #3, Plaintiff exercised his First Amendment right to speech and expression by protesting the poor-quality food served to Plaintiff because, at the expense of Plaintiff's nutritional and dietary needs the PADOC tries to conserve or its prison personnel otherwise skim off the federal and/or state funds meant to supply Plaintiff with the basic need of nutritious

food.

24. Plaintiff's lawful, constitutionally-protected protest consisted of not taking the poorly prepared alternative protein tray he was served, not allowing any other prisoners to receive a tray until better food was served and not obeying an unknown militia correctional officer's order to leave the IDR.

25. The unknown correctional officer radioed Defendant Militia Correctional Officer Lieutenant Jeffrey Banks to remove Plaintiff from the IDR.

26. Defendant Banks approached Plaintiff and repeatedly ordered him to leave the IDR, at which point pursuant to PADOC policy and custom, due to Plaintiff being disruptive, particularly, in the IDR creating a heightened risk of enciting a riot, Plaintiff would have been arbitrarily arrested by militial correctional officers and arbitrarily detained in solitary confinement in the Restrictive Housing Unit (RHU).

27. Plaintiff refused Defendant Banks' repeated orders, informing Defendant Banks that he had no authority to order Plaintiff to do anything, and in reasonable fear of being arbitrarily arrested and arbitrarily detained by Defendant Banks and a gathering crowd of militia correctional officers acting on behalf of the Federal Government and devoid of Tenth Amendment sovereign state police power, Plaintiff resisted and defended himself from being arbitrarily arrested and detained by using his weak-side left fist to strike Defendant Banks on the right side of his face. Plaintiff, who is right-handed, used his left hand so as to not use anymore force than was necessary to resist and defend himself, and so as to not inflict serious bodily harm, and so as to let Defendant Banks and the other other militia correctional officers know that Plaintiff was serious about

them not having authority to arrest or detain him.

28. Defendant Banks and several militia correctional officers place Plaintiff on the floor and after a very brief struggle, as Plaintiff continued to resist being arbitrarily arrested and detained, Defendant Banks and the several militia correctional officers used minimum force to subdue and arbitrarily arrest, detain and restrain Plaintiff by binding his wrists behind his back with handcuffs, and by binding his ankles with cuffs.

29. Plaintiff was not injured, bruised or bleeding while being arbitrarily arrested

30. Plaintiff was carried by Defendant Militia Correctional Officers Sergeant Herron, Sergeant Swire, CO I P. Peters, and CO I S. Peters, who were escorted by Defendant Banks, to the medical department of MHI-Mahanoy, where Defendants Herron, Swire, P. Peters, and S. Peters placed Plaintiff belly-down on the floor and held Plaintiff there.

31. At no time did any other militia correctional officers have direct, physical custody of Plaintiff.

32. At no point following the arbitrary arrest and detention, to include while being carried to the medical department or while being held down on the floor while fully restrained was Plaintiff aggressive, assaultive, threatening, or disrespectful. Plaintiff was completely quiet

33. Although Plaintiff could not see due to being pinned down in a prone and vulnerable position, he heard and recognized Defendant Militia Correctional Officer Lieutenant Charles Brennan's distinct whispery voice in close proximity, if not directly over Plaintiff. Plaintiff could not discern what Defedant Brennan said or who he was talking to due to Defendant's whispery voice.

34. Immediately after hearing Defendant Brennan, Plaintiff felt the pressure of the grasps of Defendants Herron, Swire, P. Peters, and S. Peters greatly increased, and nearly instantaneous to this, Plaintiff felt the sharp pain of being hit with a blunt object across the right side of his head and temple area. Plaintiff reflexively and immediately lifted and turned his head to the left, at which point a second thunderous blow was struck to the back of his head. Plaintiff attempted to roll over but Defendants Herron, Swire, P. Peters, and S. Peters increased their grips preventing him from moving his body. As Plaintiff turned his head to the left another crashing blow was delivered the left side of his head. The searing and shocking pain shooting through Plaintiff's body had him at a point where he was about to pass out as he tried to turn his head back to the right, only to receive another blow to the back of his head, which had the effect of reviving him to the painful torture. To the best of Plaintiff's recollection, a final tortuous strike was delivered once again to the right side of Plaintiff's head and across his right ear. Plaintiff, in excruciating pain and once again on the brink of losing consciousness, could smell and feel warm blood flowing from his from various places on his head and quickly pooling into the canal of his right ear.

35. To the best of Plaintiff's dazed recollection, Defendants Banks, Brennan, Herron, Swire, P. Peters, and S. Peters were the only militia correctional officers present during the torturing of Plaintiff.

36. Defendant Banks and/or Brennan tortured, assaulted, battered and maimed Plaintiff in retaliation for Plaintiff exercising his constitutional right to free speech, expression and his fundamental right to resist and defend himself from arbitrary government actions, unwanted touching and unreasonable seizure, and/or otherwise failed to prevent and/or failed to

intervene to stop the retaliatory torture, beating, assault, battering and maiming of Plaintiff for engaging in constitutionally-protected actions.

37. Defendants Herron, Swire, P Peters and S Peters directly &, participated in the torturing, beating, assault and maiming of Plaintiff by pinning Plaintiff to the floor so that Defendants Banks and/or Brennan could attack Plaintiff and/or otherwise directly participated in, enabled, encouraged and/or condoned the unprovoked attack on Plaintiff by failing to prevent it and/or by failing to intervene to stop and protect Plaintiff from the attack.

38. Plaintiff was arbitrarily detained in  solitary confinement at MHI-Mahanoy, PA from November 10, 2015 until February 12, 2016, at which point he was transferred to Federal and/or State confinement facility and Mental Health Institution at Houtzdale, PA where his arbitrary detention in solitary confinement continued until around April 2016, due to the direct actions of Defendants Militia Correctional Officers, further exacerbating the deterioration of Plaintiff's mental health due to the unconstitutional abuse and unconstitutional conditions of confinement under which <u>all</u> Defendants have subjected him.

39. Since being tortured, beaten, assaulted, and maimed, Plaintiff has suffered, and continues to suffer and be haunted by reoccurring nightmares of the November 10, 2015 torture.

40. Plaintiff is continuously subjected to physical, mental, emotional, and psychological trauma and torture under unconstitutional conditions of confinement where Defendants President Trump and Attorney General Sessions are misappropriating, misusing and/or abusing public federal funds, and there is an interdependence between Defendant ACA and the PADOC for accreditation to receive said misappropriated public federal funds to

build, maintain, operate, and staff prisons throughout the Commonwealth of Pennsylvania, placing Plaintiff in a perilous position where he is at continuous and constant risk of imminent serious bodily injury for exercising his constitutional and fundamental right to resist and defend himself against the arbitrary government actions of Militia PADOC Correctional Officers who have no Tenth Amendment authority to regulate Plaintiff's daily actions, and where despite the billions of dollars in federal funding granted to the PADOC there is inadequate cell and bed space to afford Plaintiff his constitutional right to privacy to live his life in general population in a single-cell without being forced, against Plaintiff's will and consent, to live with another prisoner, which itself places Plaintiff at risk of serious bodily injury as Plaintiff is in constant conflict with cellmates about use of the cell-light and constant use of Plaintiff's typewriter where Plaintiff does art-therapy to manage his mental illness and is in a persistent legal battle for freedom, and as recently as February 21, 2017, Plaintiff fought with his cellmate at MHI-Houtzdale, PA on FA-Block, Cell #12, while working day and night on the legal appeals, and where despite the billions of dollars granted to the PADOC to operate confinement facilities on behalf of the Federal Government, Plaintiff is forced to subsist on below-grade, nutrient-deprived food due to the Federal and State governments' racially discriminatory policy and/or custom of mass incarcerating Plaintiff specifically, along with a discriminatory and disproportionate number of other Black and Brown American Citizens under the guise of public safety.

## V. LEGAL CLAIMS

41. Plaintiff realleges and incorporates by reference paragraphs 1 -

13

40.

42. Defendant President Trump, acting under the color of Federal law, by continuing the policy and/or custom of previous Federal Executive Administrations calling for a National crackdown on truly local  intrastate crime, and/or signing executive actions/orders and/or proposing a budget for increased federal spending on law enforcement, public safety and national security" for the purpose, in part, of waging a National Domestic War on Local, Intrastate Crime -- a war, which like the War on Illegal Immigration, in the words of Defendant Trump, is a "military operation," for which militia correctional officers are required to detain a discriminatory and disproportionate number of Black and Brown Superpredator/Enemy Combatant-Belligerent/Prisoners -- and/or by continuing the misappropriation, misuse and abuse of public federal funds by continuing to grant federal funding to the PADOC for the purpose of hiring and paying Defendants Militia Correctional Officers to detain Black Superpredator/Enemy Combatant-Belligerent/Prisoner Plaintiff for the public use of providing federally-subsidized, government welfare, affirmative action jobs to poor-White rural Americans, with deliberate indifference to Plaintiff's clearly established Fourth Amendment right to be free from unreasonable seizure, Fifth Amendment right to be free from the taking of the private property of his body and sanctity of his mental, emotional and psychological well-being for public use without just compensation, Eighth Amendment right to be free from cruel and unusual punishment, Tenth Amendment right to have his daily life activities within the PADOC regulated by state correctional officers hired and payed solely with Pennsylvania state treasury funds, conspired to cause and enable, and/or otherwise directly caused, enabled, encouraged and/or condoned the

malicious and sadistic November 10, 2015 torture, beating, assault, battering and maiming of Plaintiff by Defendants Militia PADOC Correctional Officers impressed into the service of the United States, which caused Plaintiff extreme physical pain and suffering and continued deterioration of Plaintiff's mental, emotional and psychological well-being due to reoccurring nightmares and flashbacks of the tortuous and sadistic beating, in violation of Plaintiff's aforementioned constitutional rights, and/or Article 5, 9, 12, and/or 19 of the Universal Declaration of Human Rights, and/or corresponding Articles of the International Covenant on Civil and Political Rights, the Torture Victims Protection Act of 1991, 18 U.S.C. Section 2441(d)(1), (A), (B), (E), (F), and (I) of the War Crimes Act of 1996, and/or 18 U.S.C. Section 1964 of the RICO Act.

43. Defendant Attorney General Sessions, acting under the color of federal law, by continuing to misappropriate, misuse, and abuse public federal funds issuing from the United States Department of Justice Programs and/or the DOJ's Office of Justice for the purposes as incorporated from prpgh. #42, with deliberate indifference to Plaintiff's clearly established rights as incorporated from prgph. #42, has conspired to cause and enable and/or caused, enabled, encouraged, and/or condoned the unconstitutional acts against Plaintiff and the injuries Plaintiff suffers as incorporated from pargph. #42, in violation of Plaintiff's rights as incorporated from prgph. #42.

44. Defendant American Correctional Association, acting under the color of state law, with deliberate indifference to Plaintiff's clearly established rights as incorporated from prpgh. #42, by entering into joint action of acquiescing to the PADOC's and MHI-Mahanoy's voluntary, interdependent request for auditing services and accreditation from

Defendant ACA, and/or by usurping the Commonwealth's sovereign state police power to inspect, regulate and/or make regulatory recommendations for the operation, maintenance and staffing of MHI-Mahanoy, PA, so that the PADOC and MHI-Mahanoy can receive misapproptiated, misused and/or abused public federal funding to hire and pay Defendant Militia Correctional Officers, conspired to cause and enable and/or caused, enabled, contributed to, participated in and/or condoned the acts perpetrated against Plaintiff and the injuries from which Plaintiff suffers as incorporated from prgph. #42, in violation of Plaintiff's rights as incorporated from prgph. #42.

45  Defendant Militia Correctional Officer Lieutenant Banks, acting under the color of federal and/or state law, with deliberate indifference to Plaintiff's clearly established rights under the Fourteenth Amendment and the rights incorporated from prpgh. #42, by arbitrarily arresting and detaining Plaintiff, without Tenth Amendment sovereign state police power, and by maliciously and sadistically torturing, beating, assaulting, battering, and maiming Plaintiff in retaliation for Plaintiff exercising his rights to free speech, expression and protest and his fundamental right to resist and/or defend himself from arbitrary government actions, and/or by otherwise failing to prevent and/or intervene and stop and protect Plaintiff from the torturous beating, conspired to cause and enable and/or directly caused, enabled, participated in, encouraged and/or condoned the acts knowingly, maliciously and sadistically perpetrated against Plaintiff and/or caused Plaintiff's arbitrary and prolonged detention in solitary confinement from November 10, 2015 through April 2016, and the injuries Plaintiff suffers as incorporated from prgph. #42, in violation of Plaintiff's rights as incorporated from prgph. #42.

46. Defendant Militia Correctional Officer Lieutenant Brennan, with

deliberate indifference to Plaintiff's Fourteenth Amendment rights and the rights incorporated from prgph. #42, by torturing, beating, assaulting battering and maiming Plaintiff in retaliation for Plaintiff exercising his rights to free speech, expression and protest and his fundamental right to resist and defend himself from arbitrary government actions, and/or by failing to prevent and intervene to stop and protect Plaintiff from the acts knowingly, maliciously and sadistically perpetrated against him as incorporated from prgph. #42, conspired to cause and enable and/or caused, enabled, participated in, encouraged and/or condoned those acts and the injuries Plaintiff suffers as incorporated from prgph. #42, in violation of Plantiff's rights as incorporated from prgph. #42.

47. Defendant Militia Correctional Officer Sergeant Herron, acting under the color of federal and/or state law, with deliberate indifference to Plaintiff's Fourteenth Amendment rights and the rights as incorporated from prgph. #42, by arbitrarily arresting and detaining Plaintiff, without Tenth Amendment sovereign state police power, and/or by removing and carrying Plaintiff from the MHI-Mahanoy's IDR to the medical department without Plaintiff's consent and against Plaintiff's will, and/or by holding Plaintiff down and pinning him to the floor during the torturing, beating, assault, battering and maiming of Plaintiff, and/or by failing to prevent and/or failing to stop and protect Plaintiff from said torturous beating in retaliation for Plaintiff exercising his constitutional rights to free speech and expression through protest and his right to resist and defend himself from arbitrary government actions, conspired to cause and enable, and/or directly caused, enabled, participated in, encouraged and/or condoned the malicious and sadistic acts perpetrated against Plaintiff and the injuries Plaintiff suffers as incorporated from prgph. #42, in

violation of Plaintiff's rights as incorporated from prgph. #42.

48. Defendant Militia Correctional Officer Sergeant Swire, acting under the color of federal and/or state law, with deliberate indifference to Plaintiff's Fourteenth Amendment rights and the rights as incorporated from prgph. #42, by arbitrarily arresting and detaining Plaintiff and/or by removing and carrying Plaintiff, without Plaintiff's consent and against his will, from MHI-Mahanoy's IDR to the medical department, and/or by holding Plaintiff down and pinning him to the floor during the torturing, beating, assault, battering and maiming of Plaintiff in retaliation for Plaintiff exercising his constitutional rights to free speech and expression through protest and his fundamental right to resist and defend himself from arbitrary government actions, and/or by failing to intervene and/or failing to stop and protect Plaintiff from the malicious and sadistic torturous beating, conspired to cause and enable and/or directly caused, enabled, participated in, encouraged and/or condoned the acts perpetrated against Plaintiff and injuries Plaintiff suffers as incorporated from prgph. #42, in violation of Plaintiff's rights as incorporated from prgph. #42.

49. Defendant Militia Correctional Officer P. Peters, acting under the color of federal and/or state law, with deliberate indifference to Plaintiff's constitutional rights as incorporated from prgph. 42, by arbitrarily arresting and detaining Plaintiff, without Tenth Amendment sovereign state police power, and/or by removing and carrying Plaintiff, without Plaintiff's consent and against his will, from MHI-Mahanoy's IDR to the medical department, and/or by holding Plaintiff down and pinning him to the floor during the malicious and sadistic torturing, beating, assault battering and maiming of Plaintiff in retaliation for exercising his

constitutional rights to free speech and expression through protest and his fundamental right to resist and defend himself for arbitrary government actions, and/or by failing to prevent and/or failing to intervene and stop and protect Plaintiff from the malicious and sadistic torturous beating, conspired to cause and enable, and/or directly caused, enabled, participated in, encouraged and/or condoned the acts perpetrated against Plaintiff and the injuries Plaintiff suffers as incorporated from #42, in violation of Plaintiff's rights as incorporated from #42.

50. Defendant Milita Correctional Officer S. Peters, acting under the color of federal and/or state law, with deliberate indifference to Plaintiff's rights as incorporated from #42, by arbitrarily arresting and detaining Plaintiff, without Tenth Amendment sovereign state police power, and/or by removing and carrying Plaintiff, without Plaintiff's consent and against his will, from MHI-Mahanoy's IDR to the medical department, and/or by holding Plaintiff down and pinning him to the floor during the malicious and sadistic torturing, beating, assault, battering and maiming in retaliation for Plaintiff exercising his constitutional rights to free speech and expression through protest, and/or by failing to prevent and/or failing to intervene and stop and protect Plaintiff from the torturous beating, conspired to cause and enable, and/or directly caused, enabled, participated in, encouraged and/or condoned the acts perpetrated against Plaintiff and the injuries Plaintiff suffers as incorporated from prgph. #42, in violation of Plaintiff's rights as incooporated from #42.


## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment:

51. Granting Plaintiff a declaration that the acts and omissions herein

violate his rights under the Constitution and laws of the United States, and/or customary international laws and treaties, and;

52. A preliminary and permanent injunction and temporary restraining order, immediately freezing and/or sequestering all public federal funds appropriated by the Federal Government to be allocated to the Commonwealth of Pennsylvania from the Department of Justice and the DOJ's Office of Justice Programs and all related public safety federal funding allocated to the several 50 States of the United States of America issuing from the DOJ for the current fiscal year through FY2027, and ordering Defendants Trump and Sessions immediately defund the PADOC of all federal funds allocated to build, maintain, operate, and staff PADOC state correctional institutions and all of the Federal confinement facilities/mental health institutions built with VOITIS funds and operated by the Commonwealth's Executive Branch on behalf of the Federal Government, and ordering Defendants Trump and Session to not allocate any federal funds in Federal budget for the next eight years for the purpose building, maintaining, operating and staffing, with correctional officers, Commonwealth state, county or local confinement facilities, and all federal funds allocated for contracting with private prison entities, and;

53. A preliminary and permanent injunction and temporary restraining order, freezing all assets of Defendant American Correctional Association and ordering Defendant ACA to immediately cease performing auditing and accrediting services requested by the PADOC and its individual state correctional institutions, and;

54. A preliminary and permanent injunction and temporary restraining order, ordering that all PADOC Militia Correctional Officers cease their physical violence and threats toward Plaintiff and that all PADOC Militia

Correctional Officers cease regulating and issuing all direct orders toward Plaintiff, and cease stopping and frisking and searching Plaintiff's physical body and living quarters until such time that their Tenth Amendment sovereign state police power is restored, and;

55. A preliminary and permanent injunction ordering that Plaintiff be immediately issued a permanent Z-Code/single-cell status, and;

56. A preliminary and permanent injunction ordering that Plaintiff be immediately transferred to SCI/MHI-Graterford to be closer to his family in North Carolina and New York, to take advantage of college-level educational resources available there, and to be placed in the "home-region" where he was living and tried in Allentown, PA;

57. A preliminary and permanent injunction ordering that Plaintiff, as a prisoner enemy-combatant/belligerent, be afforded all protections under the Geneva Conventions, and;

58. A preliminary and permanent injunction ordering that Plaintiff be allowed to receive care-packages of healthy nutrious food on a monthly basis from his family, and;

59. Granting Plaintiff compensatory damages in the amount of one trillion ($1,000.000,000,000.00) dollars against each Defendant Jointly and severally

60. Granting Plaintiff punitive damages in the amount of one trillion ($1,000.000,000,000.00) dollars against each Defendant jointly and severally, and;

61. Plaintiff seeks a jury trial on all issues triable by jury, and;

62. Plaintiff also seeks recovery of his costs in this suit, and;

63. Plaintiff also seeks attorney fees and costs, and;

64. Any additional relief this Court deems just, proper and equitable

Respectfully submitted

Gabriel Pittman
#DT-1470
209 Institution Dr
P.O. Box 1000
Houtzdale, PA 16698

Dated: March 7, 2017

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct

Executed at MHI-Houtzdale, PA on March 7, 2017

Gabriel Pittman

22

GABRIEL PITTMAN
#NT-1470
209 INSTITUTION DR.
P.O. BOX 1000
HOUTZDALE, PA 16698

RECEIVED
SCRANTON

MAR 10 2017

PER _____ DEPUTY CLERK

U.S. DISTRICT COURT
c/o CLERK OF COURT
235 N. WASHINGTON
P.O. BOX 1148
SCRANTON, PA 18



UNITED STATES POSTAL SERVICE®
USPS TRACKING #
9114 9999 4431 4975 9058 48
Label 400 Jan. 2013
7690-16-000-7948

