# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GABRIEL PITTMAN,** | : | CIVIL ACTION NO. 3:17-CV-00443 |
| | : | |
| **Plaintiff** | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **C.O. JEFFREY BANKS,** | : | |
| **CO. CHARLES BRENNAN,** | : | |
| **CO BRADLEY HERRON,** | : | |
| **CO WILLIAM SWIRE,** | : | |
| **CO PAUL PETERS, and** | : | |
| **CO SHAWN PETERS,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Gabriel Pittman, a Pennsylvania state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights regarding the alleged use of excessive force against him.[1] *See* ECF No. 1. On August 27, 2019, Defendants filed a Motion for Summary Judgment along with a supporting brief and Statement of Facts. *See* ECF Nos. 33 (motion), 34 (brief), 25 (SOF). After Plaintiff failed to file a timely brief in opposition to that motion or a response to the statement as required by Local Rule 7.6, the Court issued an order directing Plaintiff to do so. Plaintiff has since filed an opposition to the Motion for Summary Judgment, as well as his own Cross-Motion for Summary Judgment. Defendants have also moved to strike Plaintiff's cross-motion as untimely, and Plaintiff has failed to oppose that motion. For the reasons that follow,

---

[1] The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this case concerns a federal question.

the Court will grant Defendants' Motions to Strike and for Summary Judgment, and strike Plaintiff's Cross-Motion for Summary Judgment.

I. **Factual Background**

Plaintiff Gabriel Pittman is currently incarcerated by the Pennsylvania Department of Corrections ("DOC") and was housed at the State Correctional Institution at Mahanoy in Frackville, Pennsylvania, during the assault alleged in the Complaint. ECF No. 1, Compl., ¶ 23. On November 10, 2015, Plaintiff started a protest about the food in the dining hall. *Id.*, ¶¶ 23-24. Plaintiff refused orders from Defendant Jeffrey Banks to leave the dining hall, and he punched Defendant Banks in the face.[2] *Id.*, ¶¶ 27-28. Several correctional officers, including Defendant Banks, subdued the Plaintiff, who was not injured, while they restrained him. *Id.*, ¶ 29. *See also* ECF No. 35-1, Pl's Dep. at 15 (May 20, 2019). Plaintiff was placed into handcuffs, and Defendants Paul Peters, Shawn Peters, Bradley Herron, and William Swire carried him out of the dining hall to the medical department. ECF No. 1, ¶¶ 28-30. Defendants Banks and Charles Brennan were walking with Plaintiff and the other officers but were not "carrying" Plaintiff. ECF No. 35-1, Pl's Dep. at 16-17.

After being taken to the medical department, Plaintiff was placed on the floor facedown. *Id.* at 19-20. Plaintiff was unable to see the defendants at this time. *Id.* at

---

[2] As a result of punching Defendant Banks, the Plaintiff was convicted of aggravated assault and other criminal offenses. *See* ECF No. 35-1, Pl's Dep. at 17-18. *See also* ECF No. 35-2, *Commonwealth v. Pittman*, slip op. (Pa. Super. Ct. March 8, 2018).

21.  Defendant Banks may have left the room by that point.  *Id.* at 22-23.  Plaintiff was hit on the head five or six times but does not know who hit him.[3]  *Id.* at 24-25.  As a result of being hit, Plaintiff had two lacerations on the back of his head, one or two lacerations on the side of his head which were not initially observed due to his dreadlocks, an injury to his right ear, and a deep contusion and probably a concussion.  *Id.* at 28.  The blows to the back of his head took between ten and twenty seconds to be inflicted.  *Id.* at 31.  Plaintiff was seen by a nurse within three to five minutes after the assault.  *Id.* at 32.

Plaintiff did not file a grievance about being hit on the head, although he has filed multiple other grievances while at SCI Mahanoy.  *Id.* at 33.  In Plaintiff's response to Defendants' Statement of Facts, Plaintiff states that that he "has filed myriad grievances seeking to be free from regulations by unauthorized correctional officers . . . acting without Tenth Amendment sovereign state police power," that "there exists no 'state' administrative remedy to exhaust as the PADOC and Defendants have been coopted and commandeered by the Federal Government" and that the PLRA "is violative of the Tenth Amendment."  ECF No. 38 at 3.

Relative to Defendants' Motion to Strike Plaintiff's Cross-Motion for Summary Judgment, on January 17, 2019, the Court set forth the pre-trial schedule, setting a dispositive motion deadline of April 30, 2019.  ECF No. 27.  The Court

---

[3] In his opposition to Defendants' Statement of Facts, Plaintiff disputes this fact because he was not just hit, he was "brutally assaulted and maimed."  *See* ECF No. 38 at 2.  Plaintiff provides no support for this assertion, and the Court finds that it is not material to the dispositive issues herein.

cautioned that "[a]ny motions or briefs filed after the expiration of the applicable deadline without prior leave of court shall be stricken from the record" and that "[n]o extensions of the pre-trial schedule" would be granted "absent good cause" as required by Federal Rule of Civil Procedure 16(b). *Id.* Subsequently, the Court found good cause to grant two extensions of the discovery and dispositive motion deadlines, which resulted in the dispositive motion deadline being extended to August 27, 2019. *See* ECF Nos. 30, 32.

On August 27, 2019, Defendants filed a Motion for Summary Judgment. The Local Rules require that the non-moving party file an opposition brief and response to a summary judgment motion within twenty-one days. *See* Loc. R. 7.6. Plaintiff failed to file an opposition or response to the statement of facts, and, in light of Plaintiff's *pro se* status, the Court *sua sponte* provided an additional opportunity for Plaintiff to comply with the local rules. *See* ECF No. 36. Specifically, the Court ordered Plaintiff to "file a brief in opposition to Defendants' motion for summary judgment as well as a statement of facts responding to Defendants' statement of material facts" within twenty-one days. *Id.* The order did not extend the dispositive motion deadline nor did it grant Plaintiff leave to file his own cross-motion for summary judgment. *See id.*

On December 18, 2019, Plaintiff finally filed a brief in opposition to Defendants' summary judgment brief and a response to Defendants' statement of

4

facts.[4]  *See* ECF Nos. 38 (response), 40 (brief).  He also filed his own Cross-Motion for Summary Judgment and Cross-Statement of Material Facts.  *See* ECF Nos. 37 (motion), 39 (SOF), 40 (brief).  Defendants have moved to strike Plaintiff's Cross-Motion for Summary Judgment and Cross-Statement of Material Facts.  *See* ECF Nos. 41 (motion), 42 (brief).  Plaintiff has not filed an opposition to the Motion to Strike, and the time for doing so has now expired.[5]

## II. Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 250.  The Court should view the facts in the light most favorable to the

---

[4] Plaintiff states for the first time in his opposition brief that he did not initially receive Defendants' brief in support of the Motion for Summary Judgment when he was served with the Motion and Statement of Facts.  Plaintiff submits no evidence to support his assertion and has never requested another copy of it.  The certificate of service provides that the brief was served by U.S. mail on Plaintiff.  *See* ECF No. 34 at 24.

[5] Local Rule 7.6 provides that an opposition brief is due within fourteen days of service of the brief in support of the motion at issue.  The certificate of service for the Motion to Strike provides that it was served upon Plaintiff by mail on February 27, 2020.  Therefore, any opposition to the motion was due by March 12, 2020.

5

non-moving party and make all reasonable inferences in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *See Celotex Corp. v. Carrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

A thorough and comprehensive review of the record makes clear that no material fact is in dispute as to the dispositive issue in this case. In Plaintiff's response to Defendants' Statement of Material Facts, Plaintiff "disputes" the availability of the grievance system as "coopted and commandeered by the Federal

Government" and, as it relates to the Prison Litigation Reform Act's ("PLRA") exhaustion requirement, "violative of the Tenth Amendment." Plaintiff's contentions are best construed as legal arguments, which the Court will address *infra*. Furthermore, to dispute a fact under Federal Rule of Civil Procedure 56, the non-moving party must provide evidence to support the dispute. *See* Fed. R. Civ. P. 56(e). Argument disguised as a factual dispute fails to show sufficiently that a genuine issue exists for trial. As such, summary judgment is appropriate.

## III. Discussion

Before addressing Defendants' Motion for Summary Judgment, the Court must first resolve Defendants' Motion to Strike Plaintiff's Cross-Motion for Summary Judgment and supporting documents. In their Motion to Strike, Defendants correctly argue that Plaintiff's Cross-Motion for Summary Judgment is "patently untimely," as it was due by August 27, 2019, but not filed until December 18, 2019. The Court agrees and will grant in part the Motion to Strike.

Here, Plaintiff was cautioned in the Court's scheduling order that "[a]ny motions or briefs filed after the expiration of the applicable deadline without prior leave of court shall be stricken from the record" and that "[n]o extensions of the pre-trial schedule" would be granted "absent good cause" as required by Federal Rule of Civil Procedure 16(b).[6] Here, Plaintiff has presented no cause—much less good cause—for his failure to timely file his Cross-Motion for Summary Judgment.

---

[6] Federal Rule of Civil Procedure 16 provides, in pertinent part: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

Although the Court granted Plaintiff another opportunity to oppose Defendants' Motion for Summary Judgment, at no time has the Court granted or has Plaintiff requested leave to file his motion or for it to be considered timely filed *nunc pro tunc*. Plaintiff has also not filed an opposition to Defendants' Motion to Strike, which under the Court's local rules may be deemed unopposed.[7]

Because Plaintiff has not presented good cause for deviating from the Court's scheduling order, the Court will strike Plaintiff's Cross-Motion for Summary Judgment, ECF No. 37, and Cross-Statement of Material Facts, ECF No. 39, as untimely.[8] Because, however, Plaintiff has also captioned his brief in support of his Cross-Motion for Summary Judgment as his opposition brief to Defendants' Motion for Summary Judgment, which filing for the purpose of opposing summary judgment was permitted by court order, the Court will deny the motion as to Plaintiff's brief, ECF No. 40.

Turning now to Defendants' Motion for Summary Judgment, Defendants' argue, *inter alia*, that Plaintiff has failed to exhaust his administrative remedies, which then bars his excessive force claim brought pursuant to § 1983 as a matter of law. *See* ECF No. 34 at 8–11. A review of the record demonstrates that although

---

[7] Local Rule 7.6 provides, in pertinent part: "Any party who fails to comply with this rule [requiring the filing of an opposition brief] shall be deemed not to oppose such motion." The Court advised Plaintiff of this and other important requirements contained in the Local Rules when it issued its Standing Practice Order applicable to *pro se* actions. *See* ECF No. 7 at 2 (explaining the effect of failure to file an opposition brief under Local Rule 7.6).

[8] The Court notes that for the reasons it will grant summary judgment in favor of Defendants, even if Plaintiff had timely filed his Cross-Motion for Summary Judgment, such motion would be denied as a matter of law.

Plaintiff filed a number of grievances concerning other issues, Plaintiff admits that he failed to file a grievance about the assault at issue. These facts are not in dispute. Instead, in his opposition brief, Plaintiff argues that "Defendants should be barred from asserting PLRA's *quid pro quo* protections, particularly the defense of non-exhaustion based on the undisputed material fact that they are clearly acting as federally-commandeered correctional officers under myriad bribing and extortionate unconstitutional *quid pro quo* federal laws and regulatory programs" and that the PLRA is "unconstitutional."[9]

The exhaustion of administrative remedies is a mandatory prerequisite to any prisoner's filing of a civil rights action regarding prison conditions. 42 U.S.C. §

---

[9] As noted *supra*, Plaintiff generally alleges that he did not receive Defendants' brief when he was served with the Motion and Statement of Facts. When a certificate of service is filed stating that a pleading has been served by being placed in the U.S. mail, "a presumption of regularity arises that the addressee received the pleading." *Craul v. Wal-Mart Stores East, L.P.*, No. 12-cv-1380, 2012 WL 6823181, at *5 (M.D. Pa. Nov. 29, 2012) (quoting *Fiore v. Giant Food Stores, Inc.*, No. 98-cv-517, 1998 WL 25975, at *2 (E.D. Pa. April 17, 1998). *See also In re Cendant Corp. PRIDES Litig.*, 311 F.3d 298, 304 (3d Cir. 2002) (noting presumption that a document properly mailed was received by the addressee). The presumption may be rebutted by evidence that undermines the validity of service, however the denial of receipt generally will not rebut the presumption alone. *Craul*, 2012 WL 6823181, at *5 (citing *Cendent*, 311 F.3d at 304). Here, Plaintiff's general denial of receipt cannot rebut the assumption that has arisen from the filing of the certificate of service. But even assuming, however, that Plaintiff's allegation was correct, such would be regrettable but not fatal to the disposition of the Motion because Plaintiff comprehensively addresses the issue of exhaustion in his opposition brief. Further, any defect was surely cured by the Court's provision of a second opportunity to oppose the motion. At no point has Plaintiff requested another copy of Defendants' brief. Plaintiff was clearly on notice of the issue of exhaustion and has had an opportunity to address it.

1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Specifically, § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion is a precondition for bringing suit and, as such, it is a "'threshold issue that courts must address . . . .'" *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013). The burden of proving non-exhaustion lies with the defendants asserting the defense. *Id.* at 212, 216–17. The issue of whether an inmate has exhausted administrative remedies and whether a grievance procedure is available are both questions of law to be determined by the court, even if those determinations require the resolution of disputed facts. *Small*, 728 F.3d at 271 ("[T]he District Court did not err by acting as the fact finder because exhaustion constitutes a preliminary issue for which no right to a jury trial exists.").

"[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process, as long as the grievance tribunal has authority to take some responsive action. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The applicable procedural rules for properly exhausting administrative remedies "are defined not by [§ 1997e(a)], but by the prison grievance process itself. Compliance

10

with prison grievance procedures, therefore, is all that is required by [§ 1997e(a)] to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007).

In Pennsylvania, the Department of Corrections ("DOC") has established a comprehensive administrative grievance procedure, DC-ADM 804, *available at* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf. Under that procedure, a prisoner must first submit a timely written grievance for review by the facility manager or regional grievance coordinator within fifteen days from the date of the incident. DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law." A response should be received within ten business days. Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days. Again, a response should be received within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate should receive a final determination in writing within thirty days. *See also Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd, 532 U.S. 731 (2001) (discussing the exhaustion process for Pennsylvania state prisoners under an older version of DC-ADM 804). To fully exhaust an issue or incident in accordance with DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with

11

all procedural requirements of the grievance review process." *Stroman v. Wetzel*, No. 1:16-CV-2543, 2019 WL 931653, at *3 (M.D. Pa. Feb. 26, 2019). *See also Garcia v. Kimmell*, 381 F. App'x 211, 213 n.1 (3d Cir. 2010) ("Proper exhaustion in Pennsylvania requires completion of a three-part procedure; initial review, appeal, and final review.").

Here, the undisputed facts establish that Plaintiff failed to file any administrative remedy as to the assault. Thus, the Court liberally construes Plaintiff's arguments regarding the commandeering of state prison officials and the unconstitutionality of the PLRA as a challenge to the availability of the administrative remedy procedure.

In *Ross v. Blake*, the Supreme Court of the United States reiterated that the sole issue in such a circumstance is whether the administrative remedies were "available," in the context of exhaustion and outlined the three instances in which remedies would not be "available:" (1) when an administrative procedure "operates as a simple dead end with officers unable or consistently unwilling to provide relief to aggrieved inmates;" (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands;" and (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 136 S. Ct. 1850, 1859-60 (2016). *See also Rinaldi v. United States*, 904 F.3d 257, 266-67 (3d Cir. 2018). None of these examples take into account the prisoner's subjective view of the propriety or legality of the grievance system.

12

Here, Plaintiff makes no argument that he falls under one of these three categories, nor would they appear to apply to the undisputed facts presented in the Motion. First, the administrative remedy procedure at SCI Mahanoy and at other DOC facilities does not appear to operate as a dead end because Plaintiff has utilized it many times before. Second, the administrative remedy procedure is not so unclear as to be unavailable, because Plaintiff has utilized it before and Plaintiff submits no evidence that he had difficulty utilizing it. The directions in DC-ADM 804 appear to be clear, and easy to read and follow. Finally, there are simply no *facts* that prison officials seek to thwart the use of the grievance system at SCI Mahanoy or other facilities. In construing *Ross*, the Court of Appeals for the Third Circuit explained in *Rinaldi* that only "serious threats of substantial retaliation can trigger this third category of unavailability" and that "demonstrating that an official objectively chilled an inmate from relying on administrative remedies presents a significant challenge." 904 F.3d at 269. Plaintiff stated at his deposition that he did not feel safe using the grievance system because he does not trust the officers throughout the DOC. *See* ECF No. 35-1 at 32. Plaintiff's assertion is belied by his numerous other grievances that he apparently felt comfortable filing, and Plaintiff also admitted at his deposition that he knew that any grievance regarding the assault would not go to any of the Defendants in the lawsuit. *See* ECF No. 35-1 at 34. Further, a general allegation that an inmate generally feels unsafe falls far short of "serious threats of substantial retaliation" needed to trigger the unavailability of the grievance system. That Plaintiff generally believes that state prison officials

13

have been commandeered, bribed, or extorted or that all such employees cannot be trusted does not render the DOC's grievance procedure "unavailable" as that term is used in the PLRA.

"[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi*, 904 F.3d at 268. Plaintiff has failed to establish that such remedies were unavailable to him. Accordingly, this Court finds that as a matter of law, Plaintiff failed to exhaust the administrative remedies that were available to him, as he is required to do by § 1997e(a) prior to filing suit, and will grant Defendants' Motion for Summary Judgment.

Finally, to the extent to which Plaintiff alleges state law claims in the Complaint, the Court declines to exercise supplemental jurisdiction over them. "It is well established that in an action with both federal and state claims, 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 F. App'x 507, 511 (3d Cir. 2005) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), and citing its codification at 28 U.S.C. § 1367(c)(3)). As no federal claims remain against Defendants, the Court declines to exercise jurisdiction over the remaining state law claims and will dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

The Court will grant Defendants' Motions to Strike and for Summary Judgment, and enter judgment in Defendants' favor and against Plaintiff.

An appropriate order follows.

        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     March 31, 2020